UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: _____

MARIETTA VIRGILLO,
an individual,

    Plaintiff,
v.

NCL (BAHAMAS) LTD., A BERMUDA
COMPANY, *d/b/a* NORWEGIAN CRUISE
LINES, a foreign profit corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, Marietta Virgillo ("Mrs. Virgillo") sues defendant NCL (Bahamas) Ltd., a Bermuda Company, *d/b/a* Norwegian Cruise Lines ("NCL"), and alleges:

## INTRODUCTION

1. Mrs. Virgillo brings this action as a result of injuries she sustained as a fare paying customer on the M/V Norwegian Jewel, a cruise ship, operated and conducted by NCL. Mrs. Virgillo, a person known by NCL to be disabled and in a wheelchair, suffered physical injuries in her stateroom due to NCL's failure to install, keep, manage, and maintain its shower in a reasonably safe condition for a disabled person.

## PARTIES

2. Mrs. Virgillo is a married, adult woman and was, at all times material to this lawsuit, a fare paying passenger, together with her seventy-one (71) year-old husband, James Virgillo, on

the M/V Norwegian Jewel, a vessel owned, operated, managed, controlled and/or maintained by NCL.  Mrs. Virgillo is a resident, citizen and domicile of the State of Oregon.

3.     At all material times, and upon information and belief, NCL is a foreign corporation operating for the purpose of pecuniary profit with its headquarters in Miami-Dade County, Florida.  NCL is a citizen and domiciled in the State of Florida.  It is also a common carrier of passengers.

4.     At all material times, and upon information and belief, NCL owned, operated, managed, controlled, and/or maintained the M/V Norwegian Jewel.

## JURISDICTION AND VENUE

5.     This court has subject matter jurisdiction under 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Mrs. Virgillo and NCL, and the amount in controversy exceeds $75,000.00, excluding interest.

6.     Venue is proper in the Southern District of Florida because NCL is headquartered in this District, and the NCL guest ticket contract requires that all claims for personal injury arising out of or related to NCL's cruise are to be commenced, filed, and litigated before the United States District Court for the Southern District of Florida in Miami, Florida.

7.     All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived or otherwise executed.

## COUNT ONE
(Negligence)

8.     Mrs. Virgillo realleges and incorporates by reference the allegations contained in paragraphs 1 through 7 above.

9. On or about February 28, 2014, Mrs. Virgillo booked fare on the M/V Norwegian Jewel to sail from Seattle, Washington to Ketchikan, Alaska, Juneau, Alaska, Skagway, Alaska, and Victoria, British Columbia, Canada, beginning on July 12, 2014.

10. On or about March 1, 2014, NCL was notified that Mrs. Virgillo was disabled; that she required handicapped stateroom facilities; that she has mobility difficulties; and that she would require a wheelchair, which she agreed to provide herself.  NCL acknowledged that it had received notification of Mrs. Virgillo's disability and agreed to provide Mrs. Virgillo and her husband with a stateroom designed to accommodate such disability, including, but not limited to, handicapped accessible toilet and shower facilities.

11. On July 17, 2014, Mrs. Virgillo was aboard M/V Norwegian Jewel as it travelled south from Skagway, Alaska on its return voyage to Seattle, Washington.

12. At approximately 6:00 a.m., while the vessel was in Canadian waters off Vancouver Island, Mrs. Virgillo entered the shower located in the small bathroom of her assigned stateroom. The night before, the Virgillos had not used the shower.

13. The shower floor had approximately 1½ inch light green and white tiles, and an approximate 4-inch wide drain around the outside perimeter of the shower.  There were no nonslip mats or nonslip materials on the shower floor or available in the Virgillos' bathroom or stateroom to ensure proper footing, but the floor appeared to be dry and safe for Mrs. Virgillo to walk on for her to enter the shower.  Notably, when the Virgillos had used the bathroom the night before, they:  (a) had not used the shower, (b) did not spill any water on the floor, and (c) had left the bathroom floor dry.  In short, it was not readily apparent to Mrs. Virgillo that the floor was wet.

14. When Mrs. Virgillo stepped from her wheelchair to enter the shower, she immediately slipped and fell on the wet and slippery bathroom floor and sustained serious physical injuries, including the fracture of her left ankle.

15. In attempting to rescue Mrs. Virgillo, and due to the unreasonably slippery conditions in the shower, Mr. Virgillo was required to place towels on the bathroom floor to avoid falling as he aided her. The floor was so slippery that the fluid covering it must have been a mixture of water and some substance such as soap and/or soap residue. On the previous occasions that the Virgillos had entered the bathroom, the floor had never been in this unreasonably slippery condition.

16. Because the shower was not used the night before, and when the Virgillos went to bed the bathroom and shower floor were dry, the bathroom drain (which serviced both the shower and bathroom) must have backed up over the course of the evening and flooded the floor with the slippery water mixture that caused Mrs. Virgillo's fall and injury.

17. Once Mrs. Virgillo boarded the M/V Norwegian Jewel, NCL, as a common carrier, owed its passengers, including Mrs. Virgillo, a duty of reasonable care, including without limitation to prevent injuries.

18. NCL had actual or constructive knowledge of the dangerous wet condition of Ms. Virgillo's bathroom and shower, knew that the drain backed up from sources outside of that shower, or in the alternative, created this unsafe or foreseeably hazardous condition.

19. NCL breached its duty of care to Mrs. Virgillo, and her injuries and damages were proximately caused by NCL's negligence, in one or more of the following ways:

    a. Failing to manage and maintain the stateroom's bathroom floor and shower in a reasonably safe condition when NCL had advance notice of Mrs. Virgillo's disability;

b.      Failing to install nonslip mats or other safety flooring in the stateroom's bathroom floor and shower floor when NCL had advance notice of Mrs. Virgillo's disability;

c.      Failing to provide Mrs. Virgillo nonslip mats or other safety flooring for use in the bathroom and shower when NCL had advance notice of Mrs. Virgillo's disability;

d.      Failing to inspect and maintain the shower's 4-inch drain to ensure that all water drained from the shower and bathroom floor;

e.      Failing to install a suitable drain to ensure that all water drained from the shower and bathroom floor.

f.      Failing to warn Mrs. Virgillo of the latent dangers of water accumulation and poor drainage in her stateroom's bathroom and shower when NCL knew, or in the exercise of reasonable care should have known of said conditions, and failing to take reasonable precautions to protect Mrs. Virgillo, a known disabled person, from this reasonably foreseeable danger;

g.      Failing to maintain the stateroom's bathroom and shower in a reasonably safe condition from dangers that were known, or in the exercise of reasonable care, should have been known to NCL by installing mats or other safety flooring and posting appropriate warning signs about the danger; and

h.      Failing to ensure that soap or soap residue was not left to mix with water on the bathroom floor;

i.      Representing to Mrs. Virgillo that her stateroom, including its bathroom and shower, was safe for her to use as a disabled person who required the use of a wheelchair; and

j.  Failing to prevent the ship's plumbing system, into which Mrs. Virgillo's shower was connected, from backing up and flooding Mrs. Virgillo's bathroom with water.

20. As a result of NCL's negligence, Mrs. Virgillo has suffered, and will continue to experience permanent and severe physical, mental and psychological pain and suffering, and impairment of her ability to engage in her normal activities, and to enjoy life, all to her economic damage in an amount expected to exceed $250,000.00, plus noneconomic damage in an amount to be proven at trial.

PLAINTIFF DEMANDS A JURY TRIAL.

**WHEREFORE**, Mrs. Virgillo prays for judgment against NCL for:

(1) Mrs. Virgillo's economic damages in an amount to be proven at trial;

(2) Mrs. Virgillo's noneconomic damages in an amount to be proven at trial;

(3) Mrs. Virgillo's costs and disbursements incurred herein; and

(4) For such other and further relief as the court deems just and equitable.

Dated:  May 22, 2015.

SINCLAIR, LOUIS & ZAVERTNIK, P.A.
Attorneys for Plaintiff
Courthouse Center
40 N.W. 3 Street, Suite 200
Miami, FL  33128-1839
Tel:   305-374-0544
Fax:   305-381-6869
Email: MDL@sinclairlouis.com

By:  s/Marshall Dore Louis
Marshall Dore Louis
Florida Bar No. 512680